BARNETTE, Judge
(dissenting).
I am in complete agreement with the principles of law applied by the majority to the facts as the majority has interpreted them, but I must respectfully dissent from the conclusion reached.
There is little or no disagreement among us on the pertinent and chronological facts, but we are in disagreement on the interpretation to be given to them.
Mr. and Mrs. Harry T. Lemmon were both students of a Law School in the City of New Orleans at the time of their marriage in 1961. Mr. Lemmon at that time maintained an apartment on Metairie Road in Jefferson Parish. There is no question that Mrs. Lemmon prior to marriage continued to reside in the home of her parents, Mr. and Mrs. James Vial, in Hahnville, St. Charles Parish. After their marriage Mrs. Lemmon’s residence became that of her husband in the apartment in Jefferson Parish.
During the time they were both students in the Law School and as they looked to the future after graduation, I have no doubt that they planned to make their home in Hahnville where prospects for the practice of their profession were very bright. At this point and consistent with such plans for the future, they did in January, 1963 both register to vote in St. Charles Parish, giving as their residence the home of the father-in-law (and father), Mr. James Vial. In so registering, they declared that they had maintained residence at that address since June of 1962.
*57 I see nothing improper, certainly nothing to suggest an intent to register falsely, for that address was the only residence which they could logically claim in St. Charles Parish while they were temporarily residing in Jefferson Parish in the pursuit of their studies. I have no doubt of their intention at that time to establish their home in Hahnville after graduation and the beginning of the practice of law. The use of the paternal home as their local residence until their removal there on a permanent basis is understandable.
Mr. Lemmon graduated in 1963 and began a legal connection with his father-in-law in Hahnville, but continued to reside with his wife in Jefferson Parish while she continued the pursuit of her degree in law. Mrs. Lemmon graduated in 1964 and there was no need for them to maintain any longer their apartment on Metairie Road.
At this point, in my opinion, a very significant event occurred. They did move all their personal possessions to St. Charles Parish. This move, I think, was with full intent to make their principal establishment there, but the significant thing is that they moved not to the home of James Vial but to their own home in Mimosa Park into a house built by them for their home. Mimosa Park is in a different ward from that of the Vial home, the address at which they were registered to vote.
It is true that they did not change their voting registration, but I think it is clearly evident that it was their intention to establish their home at the Mimosa Park address. The use of the Vial home address was one of convenience while they were students to serve as a temporary residence in Hahnville until they could establish their own home and professional practice.
They lived at the Mimosa Park address from July, 1964 until September, 1967 when they bought a home on Napoleon Avenue in the City of New Orleans. They moved their, now large, family into that home which became their principal residence. They remained at that address until April, 1970 when they established a residence on River Road at Hahnville in a home owned by a great-uncle of Mrs. Lemmon and which they are now renting.
Even conceding, arguendo, that they did unequivocally establish a new residence at that address, it came too late to meet the residence requirement for Mr. Lemmon’s candidacy. The decision to move to that address, I think, was made after the decision to become a candidate had been reached and it was deemed politically expedient to be an unquestioned resident of the district from which he would seek election. It might have been considered necessary to bolster his doubtful residence status in that Parish, but this is sheer speculation which is unnecessary to indulge in in view of the fact that, in any event, the move to the River Road address came too late.
During the time that Mr. and Mrs. Lem-mon were students I would agree that they could legally claim residence at the Vial home, but when Mrs. Lemmon completed her course of stduy and they were no longer required to also maintain a residence in close proximity to the University, their return to Hahnville, not to the Vial home but to their own home, was a clear negation of intent that the Vial home any longer be their residence.
It is evident that the Vial family is one of strong ties and every member is free to come and go from the paternal home at will. Mr. and Mrs. Lemmon and their children have enjoyed the openness of the Vial home to members of the family. They are welcome guests at any time to stay as long as they like and they keep some personal things there, such as baby beds, medicines, diapers and articles of clothing for the family. They have since their marriage and to the present time freely and generously accepted the hospitality and affectionate sharing of the home. They have never paid rent nor contributed in any manner to the expense of the home. It is my firm opinion that their periodic occupancy of the home at least since July, 1964 is that *58 as guests and not as residents in the legal sense.
It is my opinion, therefore, that Mr. Lem-mon does not meet the residence requirement of law to be a candidate for the office he seeks.
I would personally much prefer that he be qualified and that the electorate of the district make the important decision in which we, as judges of this Court, are much concerned; but I must express my convictions which are firmly fixed on the question at issue.
I therefore respectfully dissent.